83 F.3d 434
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Johnny "Buddy" TYNES, Defendant-Appellant.
 No. 95-5151.
(D.C.No. 94-CR-126-E)
 United States Court of Appeals, Tenth Circuit.
 April 23, 1996.
 
 Before KELLY and BARRETT, Circuit Judges, and BROWN,** Senior District Judge.
 ORDER AND JUDGMENT[1]
 BARRETT, Senior Circuit Judge.
 
 
 1
 After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. See Fed. R.App. P. 34(f) and 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.
 
 
 2
 Defendant Johnny "Buddy" Tynes appeals from his conviction of conspiracy to commit theft from an interstate oil pipeline owned by Koch Oil Company in violation of 18 U.S.C. 371. He was indicted with a codefendant, Limuel Teafatiller. Teafatiller was also charged with three counts of perjury. Teafatiller did not testify at trial, and the jury was unable to reach a verdict as to him.
 
 
 3
 Defendant contends on appeal that the district court erred in denying his motion for severance. He also contends the district court miscalculated his sentence by determining his offense level based on an erroneous finding that the stolen oil had a value of $254,000, and by enhancing his sentence two levels based on an erroneous finding that he was an organizer, leader, manager, or supervisor of the oil theft scheme.
 
 I.
 
 4
 Defendant contends the district court erred in denying his motion for severance because the codefendants were improperly joined, and he was deprived of a fair trial when the district court allowed the prosecution to introduce Teafatiller's grand jury testimony, which implicated defendant without his ability to cross-examine. Ordinarily we review the district court's decision not to sever trials for abuse of discretion. United States v. Wacker, 72 F.3d 1453, 1468 (10th Cir.1995). However, we review defendant's severance issues for plain error because, although he moved for severance both pre-trial and post-trial, he did not raise his current objections either as a basis for his severance motions or otherwise. See United States v. Mitchell, 783 F.2d 971, 976 (10th Cir.), cert. denied, 479 U.S. 860 (1986). Defendant is not asserting on appeal either of the grounds he relied upon at trial for his severance motions.
 
 A. Joinder
 
 5
 We conclude that the defendant was properly joined with Teafatiller. See Fed.R.Crim.P. 8(b)("Two or more defendants may be charged in the same indictment ... if they are alleged to have participated in the ... same series of acts or transactions" constituting one or more offenses); United States v. Rogers, 921 F.2d 975, 984 (10th Cir.), cert. denied, 498 U.S. 839 (1990)(holding that the test for a proper joinder is a common thread to each of the defendants). The fact that Teafatiller was also charged with perjury does not require severing the trials because the facts necessary to prove guilt as to the stolen oil included those needed to prove Teafatiller's perjury. United States v. O'Connell, 703 F.2d 645, 648 (1st Cir.1983); Fed.R.Crim.P. 8(b)(not all defendants must be charged in all counts).
 
 
 6
 B. Prejudicial Effect of Teafatiller's Statement.
 
 
 7
 "As a general rule, persons indicted together are tried jointly." United States v. Martinez, 76 F.3d 1145, 1152 (10th Cir.1996). Moreover, it is well established that persons charged with conspiracy should be tried together. Rogers, 921 F.2d at 984.
 
 
 8
 Even where codefendants are properly joined under Fed.R.Crim.P. 8(b), Fed.R.Crim.P. 14 confers discretion on the trial court to grant a severance. However:
 
 
 9
 The defendant seeking severance carries the burden of establishing clear prejudice if tried with another defendant. A defendant must show actual or threatened deprivation of his right to a fair trial. Merely asserting a heightened chance of acquittal or the negative 'spillover effect' of evidence against a codefendant is insufficient to warrant severance.
 
 
 10
 Martinez, 76 F.3d at 1152 (citations omitted). As articulated by the Supreme Court:
 
 
 11
 when defendants properly have been joined under Rule 8(b), a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence.
 
 
 12
 Zafiro v. United States, 506 U.S. 534, 539 (1993).
 
 
 13
 Defendant contends that the joinder prejudiced his right to a fair trial because the prosecution admitted Teafatiller's grand jury testimony implicating him. Because defendant was unable to cross-examine Teafatiller, he contends the admission violated Bruton v. United States, 391 U.S. 123 (1968).
 
 
 14
 "The Court held in Bruton that the admission of a confession of a codefendant who did not take the stand deprived the defendant of his rights under the Sixth Amendment Confrontation Clause, when that confession implicated the defendant." Schneble v. Florida, 405 U.S. 427, 429-30 (1972). Bruton held that "[t]his type of testimony is so prejudicial that instructing the jury to disregard the co-defendant's confession as to other defendants is insufficient to remedy the violation of constitutionally protected rights." United States v. Rantz, 862 F.2d 808, 812 (10th Cir.1988), cert. denied, 489 U.S. 1089 (1989); Bruton, 391 U.S. at 137. Citing Bruton, the Supreme Court recognized that the admission of evidence that is probative of a defendant's guilt but is technically admissible only against a codefendant is one of the circumstances which might carry sufficient prejudice to warrant a severance. Zafiro, 506 U.S. at 539.
 
 
 15
 However, Bruton is violated only where the extrajudicial comments are "clearly inculpatory" and are "vitally important to the government's case." United States v. Espinosa, 771 F.2d 1382, 1399 (10th Cir.), cert. denied, 474 U.S. 1023 (1985).
 
 
 16
 In some cases the properly admitted evidence of guilt is so overwhelming, and the prejudicial effect of the codefendant's admission is so insignificant by comparison, that it is clear beyond a reasonable doubt that the improper use of the admission was harmless error.
 
 
 17
 Schneble, 405 U.S. at 430.
 
 
 18
 Here, the government presented evidence at trial that American Crude, Inc., a business operated by Teafatiller and defendant, was involved in the oil theft scheme: the stolen crude oil was transported with trucks used by American Crude; an American Crude employee was used as a driver to transport the stolen oil; American Crude sold the stolen oil to reclaimers; fake invoices were used to show phony sales of oil to American Crude in order to conceal the thefts; and monies from the sale of the stolen oil were deposited in American Crude's bank account. Teafatiller testified before the grand jury that he neither owned nor supervised American Crude and knew nothing about any oil thefts. He testified that it was the defendant who owned American Crude, was responsible for its operations, and personally leased its trucks and oil storage facilities.
 
 
 19
 Over defendant's objection, Teafatiller's statements were submitted as an exhibit to support the government's perjury charges against Teafatiller. The district court gave a limiting instruction that the transcripts applied only to counts in the indictment against Teafatiller, not defendant.
 
 
 20
 We conclude that Teafatiller's statements only inferentially incriminated defendant, and "contributed no significant additional proof" against defendant. Bond v. Oklahoma, 546 F.2d 1369, 1376 (10th Cir.1976). Evidence was presented at trial that defendant was present on occasions when the oil was stolen, transported and resold; gave cash payments to the participants in the oil thefts; and withdrew large amounts of cash from American Crude's bank account after proceeds from the sale of stolen oil were deposited. In addition, a former secretary for American Crude testified that she overheard defendant discussing aspects of the oil theft scheme. Here, as in Schneble, the challenged testimony added few, if any, new facts about the defendant's involvement with the scheme, and the average jury "would not have found the State's case significantly less persuasive had the testimony as to [the codefendant's] admission been excluded." Schneble, 405 U.S. at 432.
 
 
 21
 We are satisfied that there was no fundamental trial error, that there was no violation of "a specific trial right" and that the jury was not prevented "from making a reliable judgment." Zafiro, 506 U.S. at 539. Thus, the district court did not err in denying defendant's severance motions.
 
 II.
 
 22
 Defendant also appeals his sentence, contending that the district court used an erroneously high "loss" figure in determining his offense level under the United States Sentencing Guidelines, and erroneously applied a two-level enhancement under U.S.S.G. 3.B1.1(c). We review de novo a district court's interpretation and application of the sentencing guidelines, accepting that court's findings of fact unless clearly erroneous. United States v. McAlpine, 32 F.3d 484, 487-88 (10th Cir.), cert. denied, 115 S.Ct. 610 (1994) (citations omitted).
 
 A. Amount of Loss
 
 23
 The district court made a factual finding that defendant actively participated in the theft of at least 13,000 barrels of oil from Koch Oil Company with a valuation in excess of $200,000. When property is taken, the sentencing guidelines provide that loss ordinarily is "the fair market value of the particular property at issue." U.S.S.G. 2B1.1, Application n. 2. Under the guidelines, the "loss need not be measured with precision," and the district court is empowered to make a "reasonable estimate" of loss attributable to theft, "given the available information." Id., Application n. 3. The sentencing guidelines also permit the district court to consider such factors as the scope and duration of the theft in reaching its determination of the loss. Id. The government has the burden to prove the amount of loss by a preponderance of the evidence. McAlpine, 32 F.3d at 487.
 
 
 24
 The government presented evidence at trial that Koch's monthly reports showed a shortage of approximately 12,800 barrels of oil during the period in which defendant was stealing oil from Koch. The evidence at trial also showed that this loss corresponded to the paper trail defendant created in order to cover up the thefts: during the same period Koch was showing monthly shortages, American Crude falsely reported purchasing 13,990 barrels of oil from Consolidated Fuels, and selling 13,990 barrels of oil to an oil reclaimer, purportedly purchased from Consolidated Fuels. Consolidated Fuels did not, in fact, ever sell oil to American Crude, but was actually a nonoperating shell corporation. Finally, American Crude's bank records show that defendant and Teafatiller withdrew cash totalling $237,048 from American Crude's bank account after payment for the oil allegedly purchased from Consolidated Fuels was deposited.
 
 
 25
 The government's presentence report relied on this evidence to assert that defendant stole at least 13,000 barrels of oil. It also asserted that Koch's loss was approximately $254,410, based on the then average market price of $19.57 per barrel. At the sentencing hearing, defendant's counsel stated he was not challenging this per barrel valuation, only the number of barrels purportedly stolen. Defendant's contention that the district court's determination of loss was too high is based on the testimony of two participants in the thefts, one of whom testified he was aware of six to eight trips to steal oil, or approximately 1,200 to 1,600 barrels of oil, and the other who testified he was aware of ten to fourteen trips, or 2,000 to 2,800 barrels. However, the evidence indicated that defendant could have made trips to steal oil without either of these participants' knowledge.
 
 
 26
 Given that the evidence of Koch's oil shortages corresponds with American Crude's false records and to the money withdrawn from American Crude's bank account, we conclude there is ample support for the district court's finding that the loss to Koch Industries was in excess of $200,000. Thus, the district court's estimation of loss was not clearly erroneous.
 
 B. Enhancement for Supervising
 
 27
 The district court enhanced defendant's offense level by two levels pursuant to U.S.S.G. 3B1.1(c) based on its finding that defendant was an "organizer, leader, manager, or supervisor" of the oil theft scheme. "We have held that section 3B1.1(c) is satisfied upon a mere showing 'that the defendant exercised any degree of direction or control over someone subordinate to him in the distribution scheme.' " United States v. Baez-Acuna, 54 F.3d 634, 639 (10th Cir.1995)(citing United States v. Backas, 901 F.2d 1528, 1530 (10th Cir.), cert. denied, 498 U.S. 870 (1990)). The court may consider the defendant's exercise of decision-making authority, the nature of his participation in the offense, and the degree of control and authority he exercised over others. United States v. Pedraza, 27 F.3d 1515, 1530 (10th Cir.), cert. denied, 115 S.Ct. 347, 520 (1994).
 
 
 28
 The evidence at trial established that defendant directed an American Crude truck driver to transport the stolen oil from Koch's pipeline to the reclaiming facility and falsify records about those hauls, that he paid off participants in the scheme, and arranged for false invoices and records to cover up the scheme. This clearly is sufficient record support for the district court's factual finding, and we therefore find no error.
 
 
 29
 The judgment of the United States District Court for the Northern District of Oklahoma is AFFIRMED.
 
 
 
 **
 Honorable Wesley E. Brown, Senior District Judge, United States District Court for the District of Kansas, sitting by designation
 
 
 [1]
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3